**SOUTHLAND FINANCIAL CORPORATION**

v.

**OIL SCREW MARY EVELYN and Livingston Doucet and Adam Duet.**

**No. 7542, Division "C".**

United States District Court
E. D. Louisiana,
New Orleans Division.

Dec. 16, 1965.

John J. Erny, Jr., Diaz & Erny, Golden Meadow, La., for libelant.

Kenneth W. Ford, New Orleans, La., for respondents.

WEST, District Judge:

This matter is before the Court on respondents' motions which, in effect, contest the validity of the preferred ship's mortgage sued upon by libelant. By their motions, respondents seek to vacate

the seizure of the vessel "MARY EVE-LYN"; to recover damages for wrongful seizure; to recover attorney fees; and to dismiss libelant's suit for lack of jurisdiction.

After considering the pleadings and exhibits filed herein, the arguments and briefs of counsel, and the law pertaining hereto, it is concluded that respondents' motions must be denied.

Respondents, Livingston Doucet and Adam Duet, are the owners of the Oil Screw "MARY EVELYN," a vessel duly enrolled for fishing service, bearing Official No. 267889, and having its home port at New Orleans, Louisiana. The said owners of the vessel, being desirous of borrowing money, using the vessel as security for the loan, contacted the libelant, Southland Financial Corporation, who agreed to loan respondents certain monies provided the title to the vessel was free of prior encumbrances and thus amenable to a valid preferred ship's mortgage. In furtherance of this agreement, on August 1, 1963, Doucet and Duet, as owners of the "MARY EVELYN," executed and delivered to libelant, Southland Financial Corporation, a collateral note and mortgage payable to the order of bearer, on demand, in the amount of $25,000, bearing on and affecting the whole of the "MARY EVELYN," which mortgage was, on August 5, 1963, duly enrolled and recorded with the Collector of Customs in New Orleans, Louisiana, as a preferred ship's mortgage pursuant to the Ship's Mortgage Act, 46 U.S.C.A. § 911 et seq. It is agreed that no money was loaned to respondents at that time. Between August 5 and August 9, 1963, libelant, after searching the appropriate records, satisfied itself that the "MARY EVELYN" was free and clear of other encumbrances and so, on August 9, 1963, libelant loaned to respondents, Doucet and Duet, the total sum of $21,000, for which amount respondents executed and delivered to libelent their hand note, payable to the order of libelant in stipulated monthly installments, which note was identified with and secured by the collateral mort-

gage and note that had previously been recorded as a preferred ship's mortgage on August 5, 1963. Respondents Doucet and Duet failed to meet the stipulated monthly payments on this hand note, and consequently, in accordance with the acceleration provisions thereof, libelant, contending that the entire balance of the hand note is now due and payable, brings this suit under the preferred ship's mortgage which it holds.

Respondents do not, at this time, seriously urge that they do not owe the money, nor do they seriously contend that according to the terms of the note, the entire balance is not due and payable, together with attorney fees and penalties as provided for therein. They do, however, urge upon this Court that the collateral mortgage and note, which libelant sues upon as a preferred ship's mortgage, is invalid. As grounds for this assertion, respondents contend that there was no consideration for the collateral mortgage and note when it was given on August 1 or when it was recorded on August 5, because of the fact that no money was loaned at that time. Secondly, they say that this alleged preferred ship's mortgage does not conform to the Ship's Mortgage Act, 46 U.S.C.A. § 911 et seq., because said act makes no specific provision for the use of collateral mortgages or mortgages given to secure future advances, and because the collateral note does not contain a maturity date as required by the act, specifically, 46 U.S.C.A. § 922. Lastly, while respondents urge that Louisiana law cannot be resorted to in interpreting the requirements of the Ship's Mortgage Act, still they urge at the same time that because of the fact that no money was loaned at the time this mortgage and note was given, the entire transaction is void because it was dependent upon what under Louisiana law is known as a potestative condition. This Court finds no merit in any of respondents' contentions.

The facts of this case clearly indicate that there was adequate consideration for the giving of the collateral note and mortgage on August 1, 1963. That

consideration was the promise by libelant to loan certain monies, if the title to the vessel "MARY EVELYN," was good and merchantable. 34 Tulane Law Review 800 (1960); Pickersgill & Co. v. Brown, 7 La.Ann. 297 (1852); In re York, 30 Fed.Cas. p. 811 (No. 18,138) (D.La. 1870); 25 La.Law Review 789 (1965). The affidavits filed by libelant in this case, and unrefuted by respondents, clearly show that libelant was obligated to loan certain monies if title to the "MARY EVELYN" was clear and merchantable. Title was clear and the money was loaned by libelant and accepted by respondents.

As to the contention that the mortgage note in question does not provide a maturity date as required by the Ship's Mortgage Act, little need be said. The note was payable to order of bearer and payable on demand. There is certainly no ambiguity as to the maturity date of the note. Payment was demanded when respondents failed in their obligation under the hand note held by libelant. But respondents say that all of this may be in accordance with Louisiana law, but that the Court cannot look to Louisiana law in applying the Ship's Mortgage Act. The Court does not agree. As pointed out by Gilmore and Black in The Law of Admiralty, Section 9–57, the Ship's Mortgage Act suggests no answers to many important questions. One of those questions is whether or not the mortgage may provide for future advances by the mortgagee. There is no Federal law of mortgages except such as is contained in specific statutes such as the Ship's Mortgage Act. Where voids appear, it is necessary for the Court to look to other sources for its answers. While the Federal Court may not be bound by State law in such an instance, nevertheless, the State law is the logical place to look for guidance. Uniformity is to be desired in matters maritime, but a starting point is required before uniformity can be achieved. The use of the collateral note and mortgage to secure future advances is a widely accepted practice, generally resorted to by those engaged in commerce and industry. Its use is specifically provided for by Louisiana law. Louisiana Revised Civil Code Articles 3292–3293. The validity of such a security device has long been recognized by this and most other States, and its use is a regular part of every day trading. There is nothing in Federal law known to this Court, or called to the attention of this Court, which would in any way militate against its use in connection with a ship's mortgage, and there is every practical reason to approve it. Thus, using the well established law of Louisiana as a guide, and applying it to this maritime transaction, this Court concludes that a collateral mortgage given to secure future advances may produce a valid preferred ship's mortgage when executed and processed in accordance with the provisions of the Ship's Mortgage Act, 46 U.S.C.A. § 911 et seq.

For these reasons, respondents' motions to vacate the seizure of the vessel, "MARY EVELYN," to recover damages for wrongful seizure, for attorney fees, and to dismiss this libel for lack of jurisdiction, must be denied.